UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TASHIKA M. o/b/o K.S.M., )<br>        Plaintiff, )<br>                     )<br>     v.                     )<br>                     )<br>KILOLO KIJAKAZI, Acting Commissioner )<br>of the Social Security Administration, )<br>        Defendant. ) | CAUSE NO.: 3:21-CV-76-JVB |

**OPINION AND ORDER**

Plaintiff Tashika M. on behalf of K.S.M. seeks judicial review of the Social Security Commissioner's decision denying K.S.M.'s application for supplemental security and asks this Court to reverse that decision and remand this matter for an award of benefits or, in the alternative, for further administrative proceedings. For the reasons below, this Court denies Plaintiff's request.

**PROCEDURAL BACKGROUND**

In K.S.M.'s November 6, 2018, application for benefits, she alleged disability beginning on April 11, 2018. After a May 6, 2020 hearing, the Administrative Law Judge (ALJ) issued her decision on July 30, 2020, and found that K.S.M. is an adolescent; has not engaged in substantial gainful activity since the application date; has the severe impairments of autism spectrum disorder, learning disability, attention-deficit hyperactivity disorder, auditory processing disorder, and anxiety disorder; and does not have an impairment of combination of impairments that meets, medically equals, or functionally equals the severity of a listed impairment. (AR 16-19). Accordingly, the ALJ found that K.S.M. was not disabled from the application date through the date of the decision. (AR 26). This decision became final when the Appeals Council denied Plaintiff's request for review.

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

For adolescents, the Commissioner follows a three-step inquiry in evaluating claims for disability benefits under the Social Security Act: (1) Whether the claimant is currently working at the level of substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the claimant's impairment (or impairments) meets, medically equals, or functionally equals a listing. 20 C.F.R. § 416.924(a)-(d); *see also McCavitt v. Kijakazi*, 6 F.4th 692, 693 (7th Cir. 2021). The claimant bears the burden of proof at every step.

Functional equivalence is determined by assessing the child's degree of limitation in six domains of functioning: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A marked limitation in two domains or an extreme limitation in one domain is considered functional equivalence of a listing. 20 C.F.R. § 416.926a(d). A marked limitation interferes "seriously," and an extreme

limitation interferes "very seriously," with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e).

## ANALYSIS

Plaintiff argues that the ALJ erred by failing to explain the Paragraph B criteria of the mental health listings, by failing to account for impairments in combination, by failing to properly analyze the "Caring for Yourself" domain, and by impermissibly cherry-picking evidence from the record.

### A. Paragraph B Criteria

The Paragraph B criteria are part of listings 12.06, 12.10, and 12.11, and the same criteria are also present in listings 112.06, 112.10, and 112.11. These are the six listings that the ALJ explicitly considered in her decision. *See* (AR 17). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir.2004)).

The Paragraph B criteria are that a claimant have an extreme limitation in one, or a marked limitation in two, of the following broad areas of mental functioning: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt P, App. 1 §§ 12.06, 12.10, 12.11, 112.06, 112.10, 112.11.

Plaintiff asserts that the ALJ failed to adequately explain why she found K.S.M. to have only a "moderate" instead of "marked" limitation in concentrating, persisting, or maintaining pace. As the ALJ found K.S.M. to have a marked limitation in understanding, remembering, or applying

3

information, the Paragraph B criteria would have been met if the ALJ found K.S.M. to have a marked limitation in concentrating, persisting, or maintaining pace. *See* (AR 17).

The bulk of the ALJ's analysis of concentrating, persisting, or maintaining pace is made via incorporation by reference to the later analysis of the six domains in the functional equivalence analysis. *See* (AR 18 ("As described in more detail below . . . there is no evidence to support an extreme or two marked limitations in part B of this listing.")); *see also Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021) (holding that and ALJ's discussion of the evidence at one step can support the ALJ's determination at another step).

Plaintiff argues that K.S.M.'s use of fingers to complete basic addition and subtraction, inability to repeat five digits forward and four digits backward, receptive language delay, below average expressive skills, and failure to communicate to her mother than she needed a code for logging on to her school computer during the coronavirus pandemic support a finding of a marked limitation in concentrating, persisting, or maintaining pace. (Pl.'s Br. 10[1], ECF No. 24). This evidence was discussed for the domain of acquiring and using information.

Within the discussion of attending and completing tasks, however, the ALJ noted evidence of no difficulty with visual or auditory response, some difficulty remaining on task, fidgeting in her seat, significant difficulty transitioning between tasks, often needing redirection to refocus. (AR 22-23). Further, the ALJ noted that K.S.M.'s educational records show that she completes and turns in homework 95% of the time, though she does require additional time and a small group setting to complete testing. (AR 23).

Essentially, Plaintiff is asking the Court to reweigh the evidence regarding concentration, persistence, and pace, and that is not the role of the Court on review. Substantial evidence supports

---

[1] The Court uses the page numbers assigned by the CM/ECF system for the parties' briefs.

the ALJ's conclusion that K.S.M. has a moderate limitation in concentration, persistence, and pace, and the Court will not disturb that conclusion.

### B. Impairments in Combination

Plaintiff makes two separate arguments under her heading regarding K.S.M.'s combination of impairments: an etiology argument, and an argument regarding obesity.

#### 1. Etiology

Plaintiff argues that the ALJ "emphasized" the etiological question of whether K.S.M.'s impairments were due more to ADHD or auditory processing disorder. The ALJ noted that both Dr. Wax (who conducted a psychological evaluation at the request of the state agency) and Dr. Holleman (who conducted a psychological evaluation for diagnostic clarification and to assist with treatment planning) questioned whether K.S.M. had more of an auditory processing disorder than ADHD. (AR 21-23). However, the ALJ did not cite this etiological question raised by Drs. Wax and Holleman to discount any reported symptom or limitation. Plaintiff has identified nothing that supports her contention that this unresolved question in the evidence led the ALJ to conclude that K.S.M.'s limitations are less severe than the ALJ would have concluded if the etiology were resolved. This is no basis for remand.

#### 2. Obesity

Plaintiff maintains that the ALJ failed to acknowledge or analyze the degree of K.S.M.'s obesity. As the ALJ noted, K.S.M. has a Body Mass Index of 35, which falls within the definition of obesity. (AR 17). The ALJ further noted that there is no evidence of functional limitations caused by the obesity, such as difficulty moving about or grasping items. (AR 17). The ALJ proceeded to discuss evidence of asthma (for which K.S.M. had a prescription for albuterol), sleep issues (initially diagnosed as sleep apnea but later suggested by evidence to be reduced sleep

efficiency), and lung evaluations (often clear to auscultation with no wheezing, rhonchi, or rales). (AR 17).

Plaintiff posits that K.S.M.'s obesity could have contributed to difficulties in the six domains, but Plaintiff bears the burden of proof and must do more than raise a generic concern that the ALJ should have found some connection. Plaintiff raises only one specific matter: K.S.M. was prescribed a CPAP machine but does not wear it because she does not like the mask. Plaintiff contends that this is an instance of the combination of an obesity-related limitation (sleep problems) with an autism-related limitation (not liking the sensation of wearing the CPAP machine mask) causing a matter of concern for one of the domains (caring for oneself). The Court will address the ALJ's analysis of this domain in the next section. There is no other ground for remand presented here for which analysis is needed.

### C. "Caring for Yourself" Domain and Cherry-Picking

Plaintiff contends that the ALJ erred in evaluating the "caring for yourself" domain by cherry-picking only evidence that supports her conclusion and ignoring the evidence that undermines her conclusion, including evidence of K.S.M.'s noncompliance with her CPAP machine. The domain of "caring for yourself" encompasses maintaining a healthy emotional and physical state, including how well a person gets their physical and emotional wants and needs met in appropriate ways, how they cope with stress and changes in their environment, and whether they take care of their own health, possessions, and living area. 20 C.F.R. § 416.926a(k).

The ALJ found that K.S.M. has no limitation in the domain of caring for herself. The ALJ noted that education records indicate K.S.M. is independent on age-appropriate personal care skills, that K.S.M. testified to managing certain hygiene matters, and that K.S.M.'s mother indicated both at the psychological evaluation and at the hearing that K.S.M. receives direction for

activities of daily living but is independent and on an age-appropriate level of self-care. (AR 24). The ALJ further noted that the state agency medical consultants concluded that K.S.M. has no limitation in the domain of caring for herself. (AR 24).

The ALJ's report of the record is accurate. In Dr. Wax's report of the January 22, 2019 psychological evaluation, he reported that K.S.M.'s mother has to direct K.S.M. but K.S.M. "is independent and on an age-appropriate level for self-care." (AR 407). On February 25, 2019, state agency reviewing psychologist Dr. Kennedy found no limitation in the domain of "Caring for Yourself," noting Dr. Wax's report of age appropriate self-care with her mother's direction and school records indicating age appropriate skill levels. (AR 144). On reconsideration on August 6, 2019, state agency reviewing physician Dr. Shipley offered the same opinion as Dr. Kennedy. (AR 156).

Plaintiff calls the ALJ's analysis "artificially narrow." (Pl.'s Br. 19, ECF No. 24). It appears that Plaintiff thinks the ALJ was obligated to address specific matters, such as K.S.M.'s sleeping difficulties, lack of gym class participation, and difficulty using her school's remote learning software.

The ALJ discussed K.S.M.'s sleep difficulties in her decision, specifically noting the prescribed CPAP and K.S.M.'s dislike of it, which caused noncompliance. (AR 16-17). The ALJ also mentioned K.S.M.'s prescription for Vyvanse, which was prescribed to help with focusing, daytime sleepiness, and working memory impairments. (AR 23). The ALJ noted that despite the prescription, the prescription was not picked up once in 2020 and had previously one time not been given to K.S.M. as a trial. (AR 23). Plaintiff is correct that there were also times when K.S.M. received her Vyvanse prescription. *See, e.g.*, (AR 405, 422 (indicating that K.S.M. takes Vyvanse)).

The ALJ also noted that K.S.M. does not participate in her school's physical education. (AR 21); *see also* (AR 69-70 (mother's testimony at administrative hearing)). The ALJ considered the remote learning software issue as well. *See* (AR 22). Accordingly, the ALJ did not ignore these parts of the record and cherry-pick other pieces of evidence that are more favorable to the ALJ's conclusion.

Plaintiff asserts that K.S.M. is unable to demonstrate what she has learned in academic assignments, but she does not identify any particular evidence showing a deficiency in K.S.M.'s academic assignments. Plaintiff also contends that the ALJ failed to consider Plaintiff's absences and instances of tardiness, but Plaintiff has not shown that these are attributed to Plaintiff's impairments. The school record that notes the attendance issues itself states that some of the absences could be due to late bus transportation. (AR 422).

Plaintiff notes that the ALJ failed to mention that Plaintiff has a history of playing with her feces. *See* (AR 316). However, as this was reported as "a history" of this activity in 2018[2], it is unclear whether this behavior has occurred since the April 11, 2018 alleged onset date.

To summarize, it is clear that Plaintiff wishes that the ALJ assigned different significance to certain portions of the record. However, the Court is not permitted to reweigh the evidence. The ALJ's analysis provides enough detail to permit meaningful review. For example, the ALJ pointed to the state agency reviewer's opinions and K.S.M.'s mother's statements about K.S.M.'s abilities. The ALJ further identified specific skills that K.S.M. had in the domain of caring for herself and discussed many of K.S.M's difficulties that Plaintiff contends show cherry-picking. Plaintiff has not shown that remand is warranted.

---

[2] This report is from a psychological evaluation. The clinical interview occurred on July 19, 2018, and the psychological testing was administered on August 25, 2018.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief requested in the Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration [DE 24] and **AFFIRMS** the decision of the Commissioner of Social Security.

SO ORDERED on July 19, 2022.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT